**SOUTHLAND DEVELOPMENT COR-
PORATION, Appellant,**

v.

**EHRLER'S DAIRY, INC., and Robert A.
Delling, Appellees.**

Court of Appeals of Kentucky.

June 18, 1971.

Leon J. Shaikun, Edwin I. Baer, Louisville, for appellant.

Robert E. Webb, Joe A. Wallace, F. Thomas Conway, Wallace & Webb, Louisville, for appellees.

VANCE, Commissioner.

This appeal challenges the propriety of an injunction which prohibits the appellant, Southland Development Corporation, hereinafter referred to as Southland, from interfering with delivery of milk and dairy products by Ehrler's Dairy to customers in Southland Mobile Home Park.

Southland is the owner of Southland Mobile Home Park, a privately developed mobile home park, in which it leases mobile home sites on a month to month basis. Southland has constructed private roadways throughout the park for the use and benefit of its tenants but these roadways have not been dedicated to public usage.

Southland uses a standard form lease which contains a provision by which tenants agree to abide by the rules and regulations of Southland as set forth in the lease and such further rules and regulations as Southland may thereafter adopt. It is clear from the provisions of the lease that the purpose of the rules and regulations is to enable Southland to conduct and maintain the mobile home park in a clean, safe, wholesome and proper manner for the benefit of tenants.

Regulation number 13 provides:

"No selling or soliciting in this park without first receiving consent of landlord."

Regulation Number 15 provides:

"The tenants further agree to abide by any additional rules and regulations which may be shown in a conspicuous place in the mobile home park and which may, in the opinion of the landlord of the park be necessary in the operation of the mobile home park so that the same may be a desirable, attractive and proper place for persons to live."

Southland entered into an agreement with Cherokee Dairy by which Cherokee was granted an exclusive right to distribute dairy products in the park. For a time Cherokee provided free dairy products for the management of Southland but this practice was halted and Southland now receives no remuneration for the exclusive grant to Cherokee.

Ehrler's Dairy developed a few customers in Southland Park and commenced deliveries to them. One of these customers was the appellee, Robert Delling, hereinafter referred to as the tenant.

Southland repeatedly attempted to discourage deliveries by Ehrler's Dairy into the mobile home park. Because the tenant, Delling, persisted in having deliveries made from Ehrler's Dairy, Southland initiated eviction proceedings against him. Southland also promulgated a new regulation which provided as follows:

"WHEREAS the indiscriminate use of said private roadways by various delivery trucks and other commercial vehicles causes wear and tear on said roads, causing them to become unsafe for ordinary passenger vehicle travel;

"NOW THEREFORE in order to make Southland Mobile Home Park a safer and better regulated place for its tenants, Southland Development Corporation, as Lessor of the mobile home parking lots in Southland Mobile Home Park, hereby amends the Rules and Regulations relative to the leasing of mobile home lots in said mobile home park as follows:

"Only such delivery trucks or vehicles delivering laundry and dry cleaning, groceries, gasoline and oil, milk and dairy products, pest control services, or other similar supplies or services which are delivered on a regular route, who have received written consent of the Lessor, may use the private roadways located in Southland Mobile Home Park for delivery services. All other trucks and vehicles making deliveries not coming within the above classifications shall be required to make such deliveries to the office of the Lessor located on the premises of Southland Mobile Home Park, and either leave the commodities to be delivered at said office, or receive permission from the Lessor to use the private roadways for making deliveries. * * *."

Pursuant to this regulation Southland prohibited Ehrler's from entering the park. The tenant and Ehrler's Dairy then instituted this action against Southland for damages and for an injunction prohibiting Southland from interfering with deliveries of dairy products by Ehrler's Dairy to its customers within the park. The injunction was granted.

Two closely allied questions must be considered. Does the regulation in question unreasonably restrict the tenant in the enjoyment of his leasehold? Does the regulation constitute an unreasonable restraint upon trade?

 It cannot be doubted that a tenant is vested with many of the incidents of ownership and would ordinarily have an unlimited right of access to the leased premises both for himself and his invitees. A property owner may, so long as he himself controls the property, deny access to whomever he desires. We see no reason why a property owner may not, when leasing his property, make provision in the lease controlling the use and enjoyment of the premises by the lessee including an agreement as to who, other than the tenant, may have a right of access to the premises.

Eagle Spring Water Co. v. Webb & Knapp, Inc., 236 N.Y.S.2d 266 (1962).

When the lease was entered into the tenant agreed to the regulation that no selling or solicitation would be permitted in the park. This provision was contained in a standard form lease drafted by Southland and ambiguities therein will be construed against Southland. Bays v. Mahan, Ky., 362 S.W.2d 732 (1962). The lease provision forbidding sales and solicitations is not without ambiguity. One might reasonably contend that it applies only to tenants and forbids sales or solicitations by them; or that its intent was only to preclude peddlers, or that it expressly prohibits sales but does not prohibit deliveries. In any event, the lease does not prohibit deliveries so explicitly that we can say the tenant agreed to the prohibition on deliveries when he signed the lease.

Although the tenant agreed to abide by subsequent regulations, this agreement was in the context that such regulations would be pertinent to the safety, cleanliness and proper management of the park. The learned trial judge found that the additional regulation was not so related but was prompted only by the desire to exclude Ehrler's Dairy from the park. This finding is supported by substantial evidence and we cannot say it is clearly erroneous. There was abundant evidence that the regulation was conceived as a punitive measure against Ehrler's but little evidence of the extent of deliveries within the park or the actual burdens imposed upon the park by such deliveries.

It appears to us that the regulation in question deprives the tenant of a right naturally incident to his lease; that the regulation was not adopted for reasons of safety, cleanliness or proper management of the park, and the tenant therefore is entitled to an injunction prohibiting interference with deliveries to him of dairy products by Ehrler's Dairy Company.

Without question, the regulation in question restrains trade in some degree and to the extent that the restraint imposes upon the tenant restrictions which he does not want and did not bargain for when he signed his lease, this court is of the opinion that it constitutes an unreasonable restraint. We predicate this however upon the rights of the tenant and not upon any right of tradesmen to free and unrestricted use of the roadways within the park.

The judgment is affirmed.

MILLIKEN, C. J., and PALMORE, OSBORNE, REED and HILL, JJ., concur.

STEINFELD, J., dissents.